# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 18-870V
UNPUBLISHED

| | |
|---|---|
| TONYA DECOURSEY, | Chief Special Master Corcoran |
| Petitioner, | Filed: July 9, 2020 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Special Processing Unit (SPU); Findings of Fact; Onset; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |
| Respondent. | |

*Leah Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Catherine Stolar, U.S. Department of Justice, Washington, DC, for Respondent.*

### **FINDINGS OF FACT**[1]

On June 19, 2018, Tonya DeCoursey filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered injuries, including a shoulder injury related to vaccine administration (SIRVA), resulting from adverse effects of an influenza ("flu") vaccine administered in her left deltoid on January 3, 2017. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find Petitioner's SIRVA onset likely did not begin within the 48-hour timeframe established for the Table claim.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

**I.       Relevant Procedural History**

Ms. DeCoursey filed her petition for compensation on June 19, 2018. ECF No. 1. By July 1, 2018, Petitioner filed most of her relevant medical records and a Statement of Completion.  ECF Nos. 7-8. On September 28, 2018, however, Respondent's counsel observed additional medical records that had not been filed. ECF No. 12. By October 31, 2018, counsel for Petitioner reported that each of the items identified in Respondent's status report had been filed. ECF No. 16. Additionally, on October 15, 2018, Petitioner forwarded a settlement demand to Respondent.  ECF No. 14.

On April 4, 2019, Respondent advised that he was willing to consider a reasonable settlement demand in this case. ECF. No. 21. However, on May 6, 2018, Petitioner explained that Respondent had not yet responded to her October 15, 2018 settlement demand, but expected a response from Respondent to be forthcoming. ECF No. 23. Respondent responded to Petitioner's settlement demand on June 17, 2019. ECF No. 28. In a July 16, 2019 joint status report, the parties indicated that they "see the case quite differently," and that Respondent accordingly intended to file his Rule 4(c) Report within 45 days. *Id.*

On September 3, 2019, Respondent filed the Rule 4(c) Report maintaining that the case was not appropriate for compensation under the terms of the Vaccine Act. Respondent's Report at 1 (ECF No. 29). Respondent argues that "the record does not demonstrate that [P]etitioner's symptoms began within 48 hours of vaccination," because her "first complaints of shoulder pain were non-specific with respect to onset, and do not clearly show that she had symptoms within 48 hours of the vaccination," but instead that the record supported an onset of more than two days post-vaccination. *Id.* at 5. Respondent further argues that Petitioner does not allege in the alternative that her shoulder pain was caused-in-fact by the vaccination, and thus, has not shown a proximate temporal relationship between the vaccination and her injury. *Id.* at 6. In Respondent's Report, Respondent noted that there were still records missing from the record and requested that Petitioner file a complete and certified copy of the missing records.  *Id.* at 2.

On September 5, 2019, former Chief Special Master Dorsey (who was presiding over the case at the time) stated that based on her review of the existing record, an onset hearing was not necessary, nor were briefs needed. ECF No. 30. Petitioner was ordered to refile her complete records as a new exhibit, including the request made upon the facility and any response provided with the record or certified records from this provider. *Id.* On October 29, 2019, Petitioner filed a certified copy of the missing records at Petitioner's Exhibit (Pet. Ex.) 14. *See* ECF No. 32.

2

The matter is now ripe for adjudication.

## II.     Issue

At issue is whether the onset of Petitioner's left shoulder pain was within 48-hours after vaccination as set forth in the Vaccine Injury Table. 42 C.F.R. § 100.3(a) XIV.B. (2017) (influenza vaccination); 2 C.F.R. § 100.3(c)(10).

## III.    Authority

Pursuant to Section 13(a)(1)(A) of the Vaccine Act, a petitioner must prove by a preponderance of the evidence the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL

3

408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV.    Finding of Fact

I make the following findings after a complete review of the record to include all medical records, affidavits, Respondent's Rule 4 report, and any additional evidence filed:

- Petitioner was administered a flu vaccine in her left shoulder on January 3, 2017. Ex. 1 at 1.

- In her affidavit, Ms. Decoursey averred "I received a flu shot in my left arm during a regular (ITP) Thrombocytopenia follow-up appointment at my Hematologist Clinic, UF Health Adult Hematology Oncology. Approximately 2 days after receiving the shot, I experienced soreness that continued to get worse and became unbearable. The pain became so bad that I could not lift my left arm away from my body. I had to use my right hand to lift my left arm just to bathe and dress myself. Activities such as driving and steering a car resulted in excruciating pain. There were times I needed help to help bathe and dress myself. The only relief I experienced was when resting my left arm against my body." Ex. 8 at 1.

- On January 20, 2017, 17 days after vaccination, Ms. DeCoursey sent a message to the clinic where she received the vaccine and informed the clinical staff about the pain from the vaccination. *See* Ex. 7 at 1. The note states "I received the flu shot on January 3 there and I have been having alot [sic] of pain in my shoulder, its almost unbearable. Any suggestions to help ease this pain? Limited range of motion, swelling, very painful." *Id.* The provider indicated that "the muscle must be

4

irritated" and recommended Ms. DeCoursey try a heating pad or cold compress and to take Tylenol for the discomfort. *Id.*

- On January 26, 2017, Ms. DeCoursey sent a follow-up message to the clinic. *See* Ex. 7 at 2. The message states "[t]he pain from flu shot site area (shoulder) hasn't gotten any better. I've been doing as told, hot/cold compresses, Tylenol. This pain is so discomforting, this can't be typical soreness its by far a 10(pain). I'm sorry to keep bothering the clinic, but I'm hurting." *Id.* The provider forwarded Petitioner's message to a physician and recommended that she check with her primary care physician for additional recommendations. *Id.*

- The next day, on January 27, 2017, Petitioner presented Dr. Jonathan Taffe, her primary care physician, for an initial evaluation of left shoulder pain. Ex. 6 at 1. Dr. Taffe noted "[g]radual onset since receiving flu vaccine. Duration: 3 weeks. Severity: moderate-severe." *Id.* Dr. Taffe's assessment was "Acute, moderate-severe. Differentials include [rotator cuff] RTC tear vs [subacromial bursitis] SAB but concerning for a tear. Discussed management: xray/MRI and [follow-up] f/u with results. If there is no tear then we can consider a steroid injection." *Id.* at 3.

- More than one year later, and following a successful February 2017 steroid injection, on February 7, 2018, Petitioner presented to Dr. Joseph King, III on February 7, 2018, at the University of Florida Department of Orthopedics. Ex. 5 at 1; Ex. 6 at 8. The note states that Ms. DeCoursey had complaints of left shoulder pain and stiffness with "sudden onset since 2-3 days after she got a flu shot on 1/3/17. Patient denies history of a specific injury." Ex. 5 at 3.

- On March 12, 2018, Ms. DeCoursey received a physical therapy consult with physical therapist, Christine Eckert. Ex. 9 at 7. The note states, "Patient got a flu shot last January and had typical soreness that never went away." *Id.* The assessment continues, "[t]he patient presents today with left shoulder pain that began last year after receiving a flu shot causing her to not be able to lift her arm independently."

Although the record contains some ambiguities, it does not preponderantly support a finding that onset began in 48 hours of vaccination. I base this determination on several items of evidence. First, Petitioner's own affidavit does not report an immediate onset, but rather places it in two days. While arguably this could be deemed to mean *less* than 48 hours, it does not tend to suggest that. Second, although the records do support the conclusion that Petitioner did feel pain close in time to receipt of the vaccine, and promptly sought care for that pain, she did not right away describe a fast onset. Indeed, the January 27th record only reports a "gradual" onset, which is not wholly consistent with one within 48 hours. Ex. 6 at 1.

Finally, and most persuasively, the records from a year later do not clarify onset as closer in time to vaccination, but instead affirmatively state an onset of two to three days post-vaccination. Ex. 5 at 3. In many cases in which onset is disputed, a petitioner

5

over time more regularly identifies a closer onset – whereas here Petitioner (consistent with her affidavit) does not.

Accordingly, I find there is insufficient preponderant evidence to establish onset of Petitioner's pain within 48 hours of vaccination, and therefore this case must be transferred from SPU. I also note, however, that other Table indicia of a valid SIRVA claim (e.g., fairly immediate pain consistent with a Table definition for SIRVA) *does* seem to exist – meaning that this claim is likely a viable non-Table claim. To that end, I urge the parties to make one final brief attempt at settlement – as I would anticipate that even after transfer, Petitioner's claim will be seen favorably by the special master who receives it.

**The parties shall file a final settlement status report on or before August 31, 2020. The matter shall be transferred thereafter if the parties do not report progress in these efforts.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master